May it please the court, my name is Mark Stern, I am the attorney for Darren Cooper. Mr. Cooper is a disabled man who, when he applied for Social Security, did it pro se, messed it up. It eventually went to an appeal. He hired counsel and the ALJ reversed and awarded compensation. At that point, Mr. Cooper's counsel filed a corrected application, which corrected some of the deficiencies in Mr. Cooper's original one. The Social Security admits they received it, admits that they cataloged it, and admits that they screwed up and didn't catalog it correctly. Several months later, they cut Mr. Cooper a check for vastly in excess of what he was entitled to, but he didn't know the difference. Years went by and Social Security then, well, Mr. Cooper had some financial problems, filed bankruptcy. Social Security, after the bankruptcy, recalculated and found out the mistake that it had made and assessed him some 50-some thousand dollars in which they then proceeded to collect by stopping his ongoing Social Security disability payments. One of the problems that Mr. Cooper had with that is that when Social Security stopped his ongoing payments, it also, I'm not sure the correct word, but vacated his Medicare entitlement. So here he is not getting the money, but all of a sudden, he's not getting the medical care that he needs. He's still disabled. Mr. Cooper then had filed a bankruptcy. The IRS was not listed because Mr. Cooper didn't know that he owed them anything. He was just getting a Social Security disability. So it's clear counsel that at the time of discharge, he didn't realize or didn't know that there was an overpayment. That's correct. He had no idea. He had no concept. He got something after the bankruptcy when they stopped his payments. And indeed, Mr. Stern, the bankruptcy court was not aware of it either in terms of structuring his ultimate discharge in bankruptcy, correct? It was a no-asset case, Your Honor. Yes, that's the point. There was no assets, so there was not any consideration of it by the bankruptcy court. No, there was no consideration of it one way or the other. And once he was notified of overpayment, he had the right to appeal the decision to try to recoup the overpayment, and he chose not to do that? I can tell you that it was not successful, and it may still be ongoing. What do you mean by that? I thought that he didn't avail himself of that option and chose to go back to bankruptcy court. Well, he did go back to bankruptcy court, and he's now after the 60 minutes. So he didn't choose the administrative appeal route? He did not. And if he had, would there be consideration of the equities in that process? Do you know? I do not know, but I would also know that I can also tell the court that the law, it's United States al-Qaeda export versus U.S. determined that exhaustion of administrative remedies is not necessary when the agency I'm not assuming that he had to have exhausted any administrative remedies in order to pursue this appeal or in order to go back to bankruptcy court. I'm just trying to understand if he had alternative routes. He's in the process of doing it. He's been told it's going to be denied. He hasn't got the denial. It's somewhere in the grist of the administration. In point of fact, he went back in February of 2023. He reopened his bankruptcy case, correct?  And then essentially sought sanctions against Social Security because Social Security had immediately reducted his payments. Immediately, they started deducting monthly benefits. Isn't that correct? Before he went back into bankruptcy, when he It took effect immediately, and as I understand it, almost $2,500 less a month was being distributed. Something like that, plus his medical benefits. Immediately. It was a fait accompli. It was done automatically. And then he went back into bankruptcy court seeking sanctions in terms of being in conflict with the bankruptcy court rulings. Correct, Your Honor. And then there was a hearing. The judge, Judge Barreca, decided that the doctrine of recoupment could be used to offset the current benefits with the amount that had been awarded or with the incorrectly paid amount. I would point out that recoupment is not provided for in the bankruptcy code. It's an equitable remedy. And an equitable remedy should not be used to punish an innocent person because everyone admits that it was the Social Security's error. The appellee has admitted that it may be a mutual mistake of fact. We don't think it's a mutual mistake of fact. We think that when Social Security misrecorded what he was getting, that it was their error and not Mr. Cooper's. Because Mr. Cooper, he couldn't tell what he was supposed to get and what he wasn't. He's not a college graduate. He was working as a project matter or a laborer. It's hard to believe that he would be able to do the calculation and know what he should or shouldn't get. Well, the thrust of the argument below, wasn't it? It was the degree to which the logical relationship test should be applied in terms of under Ninth Circuit jurisprudence, correct? Wasn't that really the thrust of the legal argument below? I think, Your Honor, that the bankruptcy appellate panel attempted to apply what it perceived Ninth Circuit law to be. Which I think is referred to the logical relationship test, if I'm not wrong. Which is Newbery versus Nestor. And I would say that the bankruptcy court got it wrong. You have to start by looking at Newbery to determine... Whether it's the same transaction or not, essentially. Whether it's the same transaction or not. And that was the thrust of the ruling that was deemed to be the same transaction. And, ergo, equitable recoupment could apply. Yes. In Newbery, there was one contract and both sides of the contract. It was a commercial dispute. In fact, every Ninth Circuit case that has looked at the doctrine of recoupment has done so in the term of a contract. Not in terms of bankruptcy. Even in terms of bankruptcy, they've looked at it in terms of a contract. And this is not a contract. And it's not a contract for two reasons, or maybe even three. First, Social Security is not based in contract. Our Supreme Court decided that 60 years ago in Fleming versus Nestor. I don't know if that's cited or not. It's a social equity program and it's not a contract. Counsel, did you want to reserve? Your Honor, I can't hear you. Did you want to reserve time for rebuttal argument? We had agreed 10-10 and whatever's left for rebuttal. We were told we had 30 minutes as opposed to the 15 we started with. That's fine. Thank you, Your Honor. The point of it not being a contract was that it's an entitlement for Mr. Cooper to have a contract. Essentially, at least below, the entitlement only arose because he became disabled. No, that's not the case, Your Honor. That's what the court thought, but that's not the case. That was the ruling below from the court. That was the ruling below, but that's not the case. I don't know how well it was argued, but a Social Security entitlement is a monthly entitlement. You have to live to the end of the month to be able to collect it. You have to be currently disabled, and amicus will address that with much more detail than I can, but it's not a contract. It's not a right that flows out of the original award. It's a right that flows out of being disabled, and Mr. Cooper remains disabled. Right. I mean, that system is set up so that it can constantly be reevaluated, right? It's not like you get the benefits and then it's secured forever. Correct, Your Honor, and I believe Social Security is required to reassess on a regular basis, and I think it was, but I don't know. It was one of those reassessments where they decided they made a mistake because if it was just set it and forget it, he would still be receiving the benefits and they wouldn't decide they had to make a mistake. So someone had to cause them to go look at it, and I would submit that that's because the Social Security Act requires the Social Security Administration to inquire as to the current status, and that didn't happen here, or that did happen here, and they screwed it up. They said we're going to recoup it. Excuse me. My clock is now saying time remaining, and it's going up. Did I use my 10 minutes? It's going up, yeah. Okay. You did. Well, don't worry. We'll give you an extra minute or two. Thank you. And that's essentially the problem is that the BAP applied Ninth Circuit law and did it incorrectly, and that's why it needs to be reversed and sent back, and there needs to be a decision in this circuit that sets forth what the other circuits that have ruled on this have said, and what the bankruptcy court in Oregon said in in re French. Thank you. Thank you, counsel. And I guess we'll hear from the appellee. Your Honor, if I may, I believe Omikai go next.  Sorry. May it please the court. Thomas Moore is mayor of Kramer-Levin or Amakai National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys. As the panel has already observed, social security disability benefits, they provide income security, and the bankruptcy code provides relief from pre-bankruptcy claims, and we submit the Third Circuit got it right in Levy-Schweiker when it held that SSA violates the goals of both statutes when it reduces post-bankruptcy benefits and denies income security to recover a pre-bankruptcy claim in violation of the stay. In this instance, in violation of the discharge. And this court has never differed with Levy-Schweiker on this point. This court has never held that post-bankruptcy social security disability benefits can be reduced to cover pre-bankruptcy claims. The courts below, as principal counsel has noted, and the SSA, they all rely on precedents that don't apply. They all involve reimbursement for services rendered by hospitals or payments to pensioners for money that they earned as a pension and they got paid too much. But none of those payments involve the basic function of income security. They don't depend on the beneficiary's poverty. They don't address specifically the beneficiary's poverty. They depend on what was paid and not paid. And this statute is different. Section 204 of the Social Security Act, it does not, as the government argues, it does not adjust disability payments up and down and it doesn't require SSA to reduce benefits. It provides the SSA with a collection of remedies. And if SSA discovers an overpayment, the statute gives it various remedies to collect that overpayment. And the Bankruptcy Codes Discharge is designed to protect debtors from collection remedies. Counsel, if you can clarify, what is the rule that you're advocating for? That it can never apply to disability benefits or that it's determined on a case-by-case basis? The former, Your Honor. The Third Circuit said that these are not benefits that are subject to recoupment. And I believe that is a correct, I submit that is a correct statement of law and I don't think it is case-by-case. There's a statement, I guess it's in the, it might be in the BAP, it's in the government's brief suggesting that this is a matter for the Bankruptcy Courts' discretion. I think this is binary. Either these benefits are protected from recoupment or they're subject to recoupment. It's not a matter for a Bankruptcy Court to say, in this case, I think it should be. In this case, I think it shouldn't be. The discharge is granted based on facts in existence at a discharge hearing. Is that affected at all by the Bankruptcy Court dealing with what is called a logical relationship test? They seem to get lost in terms of either factual relationship or a legal relationship. And there was something in the briefs about that. Is that analysis at all affected or was it correctly applied or should it have been considered at all? I submit that the logical relationship test does not apply to income security benefits because income security depends on the status of the beneficiary at any moment in time, not a payment history or an earnings history. It has to do with the beneficiary's status at a particular moment in time, which is not logically related to whether he or she was paid or overpaid at a previous point in time. But does it arise out of the same transaction or occurrence, I guess, in terms of, at least that appears to have been the argument of the government, that it arises out of the same occurrence, i.e., the disability? No, I understand that it was Mr. Cooper's disability that triggered the right to his payment pre-bankruptcy, but his continuing right to payment depends on facts and circumstances that exist after the bankruptcy is over. If he dies, he doesn't get the payment. If he comes into money, he doesn't get the payment. If he has other benefits post-bankruptcy, they may reduce the payment. This isn't simply a calculation of what was he paid before and what should he have been paid. It's inconsistent with the purpose of both SSA and the Bankruptcy Code to say that Mr. Cooper suddenly gets thrust back into poverty because SSA uses its statute to effect a recoupment that isn't provided for in the Bankruptcy Code. That's the whole point of a bankruptcy discharge. I get to live. And this court has also said – again, adopting language from the Third Circuit as its own – this is in Gardens Regional Hospital. We have stated our express agreement with the Third Circuit – I'm slightly paraphrasing – that the recoupment doctrine in bankruptcy cases should be applied only when it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligation. Well, okay, it is inequitable to let a hospital keep an overpayment without recoupment, but it is equitable and, indeed, it is necessary to give an individual debtor post-bankruptcy benefits designed to keep him from poverty even though he got a payment pre-bankruptcy that would be subject to the discharge. I think this is a binary question. I think the Third Circuit ruled very clearly 40 years ago. I don't think there's another circuit that has addressed this issue and said, No, recoupment is available for social security disability payments. There are a couple of lower court cases that come close. They deal with other benefits that aren't income security benefits. But we would urge this court not to adopt a rule of law that would subject thousands, if not tens of thousands, of social security disability beneficiaries in the Ninth Circuit to a hazard that is not present elsewhere. These are poor people. They depend on government benefits. Mr. Mayor, I believe that you cited Lee v. Schweiker, the Third Circuit opinion, in 1984 several times, but according to the briefing here, the Second, Sixth, and Seventh Circuits have also essentially followed that principle. Is that not correct? Yes, it is correct. The Malinowski case, we think, is very useful and on point. That's the Second Circuit case. That's the Second Circuit case. It doesn't quite deal with exactly the same benefits. But, yes, I think that that is a supporting decision. The Sixth Circuit dealt with a cousin of this issue in connection with social security's attempt to say, only we at social security have jurisdiction to determine who gets benefits and who doesn't. The bankruptcy court has to stay out of it. The Sixth Circuit said, we are not going down that road. In some ways, some of the positions taken by the government in this case, it's almost an attempt to resurrect that process by suggesting that once benefit determination is given to social security, the bankruptcy discharge is irrelevant. That should not be the law. Thank you. I'm happy to answer further questions, but I would otherwise not encumber the court's time. Okay. I don't have questions. I have no further questions. I don't have any questions. Thank you. We thank you for your argument. Thank you for the opportunity. Okay, so now we'll hear from Mia Pili. Pili, you could wait a few seconds until that screen is on. Great. So, counsel for Pili, we've made the time 30 minutes per side. Thank you, Your Honor. Good morning, Your Honor, and may it please the court. This court should affirm the bankruptcy appellate panel's decision for two independently sufficient reasons. First, on a purely statutory ground, because the Social Security Act mandates that the Social Security Administration, which I'll refer to as the agency, adjust Mr. Cooper's ongoing benefit calculation to account for the $73,000 overpayment that he received in 2019. That's a clear statutory directive that the agency must follow, and there's no conflict between the Social Security Act, Section 404A1 of Title 42, and anything in the bankruptcy code, specifically not the bankruptcy code's discharge injunction, which does not mention recoupment and does not prohibit the recoupment that is required. Under that argument, where does the equitable recoupment doctrine fall? It's just a nullity? No, Your Honor. The equitable recoupment doctrine is the second basis on which this court should affirm, but on the purely statutory grounds, the court does not need to reach the equitable doctrine of recoupment, and it needs to follow the statute that applies and governs the agency's conduct here. What about the Section 404A you cited? Section 407A specifically provides that the right of any person to any future payment under this subchapter, now this is under the Social Security Act, shall not be transferable, and none of the monies paid or payable or right existing under this subchapter shall be subject to attachment, garnishment, or other legal process. That certainly seems to conflict with the notion that there can be this ex post facto action by the Social Security Administration after through no fault of Mr. Cooper, it took three years for the Social Security Administration to correct its error. How does 404A jive with 407A? 407A is what's known as the anti-alienation clause of the Social Security Act, and it protects a Social Security beneficiary from a creditor taking legal action, engaging legal process, to try to attach those benefits, to garnish benefits that are paid to the beneficiary. That provision does not apply to the agency itself in calculating the amount of benefits that the beneficiary is due. Is there any case law that supports that exact theory? I understand that's your argument. I'm asking is there a case. There are cases, for example, the Third Circuit is totally on point and totally rejects the position of the government as counsel has noted, and your argument is 407A does not conflict with 404A. Do you have any cases under 407A that would permit this kind of recoupment of benefits that are paid excessively as to someone who's come out of bankruptcy? Well, Your Honor, the cases that apply 407A talk about creditors. No, no, no. I don't mean to cut you off, Mr. Forsythe. I'm asking a question, and the point is that I understand what your argument is, and I'm asking if you have any cases that support your interpretation of that in that fashion that would support the argument that the Social Security Administration is allowed to come in and just reduce payments despite the bankruptcy court order. And I have not found any. I guess if I've missed it, tell me. No, Your Honor, I don't think you have missed it, and I don't think that 407A has ever been. I'm not aware of any case law discussing the application of 407A to the agency itself because it is understood as a protection for beneficiaries against creditors, not the agency when the agency is trying to recoup an overpayment. So it's just not an issue that the courts have addressed. So it's not a matter that's been decided against Social Security. Then my question to you, again, Mr. Forsythe, would be, is the position of the government in this case within the spirit of 407A that seeks to protect the beneficiary in that fashion against garnishment, attachment? Here, this is very similar to a garnishment or attachment, is it not, to suddenly come forward three years later and seek recoupment of $73,000 and then summarily just start collecting it, like the next month just start deducting benefits? That is in the area, is it not, of attachment or garnishment? Well, Your Honor, the law makes a distinction between recoupment and other types of collection remedies. Other types of collection remedies are those that would allow a creditor to reach into Mr. Cooper's pocket and take money away from him, affirmatively demand a payment from him. That's the type of relief that he gets because of his bankruptcy discharge. He's protected from those types of actions. Social Security in 404A1A has three different remedies that it can use to try to collect an overpayment from a beneficiary, but only one of those is available here because Mr. Cooper gets the benefit of the bankruptcy discharge. He gets the benefit that protects him from Social Security trying to offset his federal tax refund, for example. They can't do that because it's prohibited by the discharge injunction, which specifically mentions offset. Also, another remedy in 404A1 is to demand payment and collect payment directly from the debtor, and Social Security agrees that it cannot do that either. The only remedy that's available here, the only way for Social Security to comply with its statutory mandate, and the Supreme Court has called this a mandate in Sullivan v. Everhart, 1990 Supreme Court decision, that the 404A1 instruction is a mandate that Social Security adjust future benefits to account for a prior overpayment, and there's no way around that. Mr. Cooper's right, his entitlement, there was a lot of discussion in the first half of the argument about an entitlement to Social Security benefits. His only source of entitlement to these benefits is the Social Security Act itself. Counsel, I guess I really struggle with that argument because you want us to say, well, the statute mandates that Social Security collect back the overpayment, and the analysis sort of ends there, but I go back to my original question of what happens to equitable recoupment? We can't end the analysis with the statutes giving the government the right to recoup the monies because now he's gone through bankruptcy. The debt's been discharged. It's not his fault that Social Security figured out too late that it had overpaid, so now we're in a position where we have to tackle directly the doctrine of equitable recoupment, right? We can't just stop the analysis of, well, the statute says that the government gets to recoup, and so therefore we don't need to reach the doctrine of equitable recoupment. You're reading that completely out of the analysis. Your Honor, I will address equitable recoupment. It's certainly a basis on which the Court should affirm, and the Social Security Administration can meet those, but if I may, I want to direct the Court's attention to the D.C. Circuit's consumer health services case, and in that case, the D.C. Circuit decided in favor of Medicare being able to recover a pre-petition overpayment and to recoup it from post-petition payments that it owed to the health care provider, and the Court decided that on two grounds. First, on the purely statutory ground of 42 U.S.C. 1395G, which is very similar to 404A1 in this case. It was a statutory mandate that the federal agency recover overpayments, and the Court, all three judges on the panel agreed with that part of the decision. The Court then went on to also decide on equitable recoupment grounds and said that also under equitable recoupment, Medicare could recover these overpayments. Judge Sintel filed a concurring opinion in that case and said, I won't join that. Let me have you move on to equitable recoupment. Do you agree that the Ninth Circuit has no case that is dispositive, no case that's on all fours with the facts of this case? This is an issue of first impression in this circuit to apply equitable recoupment in the Social Security context. So we are arguing on the basis— The case arising out of bankruptcy. Pardon me? In the context of the bankruptcy action. Yes, equitable recoupment is a doctrine that arises within bankruptcy, and the cases that we rely on are closely analogous. They deal with the Medicare program, Medicare payments, the SIMS case, also known as the TLC Hospitals case. Right. No, I agree with you that there's nothing on point, but what I'm disturbed by is that the bankruptcy, the BAP, seems to think that its hands are tied. In its decision twice, the BAP says, well, I'm looking now at page 104. Although Cooper's equity argument resonates, we are bound by contrary Ninth Circuit law and by Cooper's failure to utilize the remedies afforded by the Social Security Act. Next page. Accordingly, the bankruptcy court and this panel are obligated to follow Ninth Circuit precedent. I'm looking, and like the parties have argued, there's really no binding precedent. So at least to that extent, I think the BAP went awry. Would you agree with that? By assuming that there's Ninth Circuit precedent that binds the outcome of this case. I wouldn't agree. I think that the Ninth Circuit precedent clearly directs the outcome that the BAP reached. It was applying the logical relationship test. I don't think the BAP said there was a Social Security decision from the Ninth Circuit, and therefore we must rule in this fashion, but it was looking at the logical relationship test and applying it to the facts of this case. And on that basis held that equitable recoupment applies as this court. Well, I think the problem is that it read the case, the Ninth Circuit case, so narrowly that it didn't take into account any of the equities involved in this case. It didn't analyze any of the equities involved. The Ninth Circuit's decisions have confined the equitable analysis to the logical relationship test, looking at whether there is a close legal and factual relationship between the countervailing obligations. Which essentially, in following up Judge Wynn's question, essentially relates to the trust fund, correct? In terms of the SSDI trust fund. That's to what you're making reference. The trust fund is the source of the overpayment. It's also the source of the money that will be paid to Mr. Cooper as ongoing benefit payments. But that is not directly analogous in this situation, because the beneficiaries must pay into that fund, correct? Beneficiaries, well, beneficiaries, a beneficiary receiving disability insurance benefits like Mr. Cooper. Yes, has paid into the fund. He has paid into the fund.  These are earned benefits. Right, earned benefits. That he received based upon his prior work history and meeting the requirements of certain quarters of coverage. We detail that in the brief, what the formula is. And so, yes, these are earned benefits, just like retirement benefits are earned benefits. We're into the legal relationship analysis in terms of the test, and the legal relationship test also considers workman's compensation payments. That was the whole basis of it, correct? Of which the Social Security had knowledge in 2019. The formula, yes, the formula reduces the payment of Social Security. Yeah, and that was the basis, because they have, under the statutory scheme, under 424A-2B, they have to consider workman's compensation benefits. And they were so advised in 2019. Mr. Cooper, for the first time on May 1st of 2019, advised the Social Security Administration that he had received worker's compensation benefits. That came two years after his false statement on his initial application in May of 2017 that he was not receiving worker's compensation. He was represented by counsel by 2019. He was. Was he represented by counsel in 2017? No, he was not. So, pro se, your view is that he made a false statement. Some might say he made a mistake. And I understand the argument of the government is that he made a false statement. But clearly, once he was represented by counsel in 2019, he provided the correct information, correct? He did. He did. It was only two days after he provided that information that Social Security processed the request and determined that he was entitled to disability insurance benefits. Then it spent a few months determining whether he had also received supplemental security income. It determined that he did not. And then in August of 2019, it made this $73,000 overpayment. The case doesn't come down to whether Mr. Cooper was at fault or whether the agency was at fault in causing the overpayment. But clearly, the two-year-long delay. Three years. The two-year-long delay by Mr. Cooper in providing the correct information about his worker's compensation benefits contributed to the error that occurred here. Probably not a path you want to go down, counsel, I wouldn't think, in that the two-year delay that resulted from not being represented by a lawyer is more than offset by the three-year delay that the Social Security Administration has before it acted. Wouldn't that, in terms of the matter of the equities here? Well, the three-year delay was just an additional period of time that Mr. Cooper enjoyed the benefit of the windfall before Social Security requested that he repay that. There was a three-year delay because the Social Security Administration screwed up. But the point being Mr. Cooper didn't suffer any harm because of that three-year delay. He hasn't suffered any financial harm because of that three-year delay. I'd like to get back to the logical relationship test and how Social Security meets that test here. The logical relationship test requires a close factual and legal connection between the countervailing obligations. And those countervailing obligations here are the overpayment in 2019 and Mr. Cooper's claim to ongoing, unreduced disability insurance benefits. Well, the logical relationship test only comes into effect because recoupment is only permissible, only permissible where it satisfies the logical relationship test that such countervailing obligations arise out of the same transaction or occurrence, correct? That's the importance of it. That's correct. That's the only basis that allows Social Security to recoup and seek to recoup in this fashion. So the burden is on the Social Security Administration with respect to the application of the logical relationship test, correct? Social Security needs to show that there is a close factual and legal connection. Right. So before we even get to the matter of the equities, even on that ground it has to show that it arises out of the same transaction or occurrence, correct? That's correct. All right. And the matter of whether it's a contractual relationship of such, for example, that's the argument Mr. Merrill was making earlier. So that really is the burden you bear here even before you get to the matter of the equities, which I can understand you might want to not get to too quickly in terms of the equities, but in terms of that it has to be the same transaction or occurrence. Basically the argument of the government is the same transaction or occurrence is the disability which Mr. Cooper suffers. That's essentially your argument, is it not? No, it's not, Your Honor. Okay. What is the same transaction or occurrence? Same transaction. Sorry. I didn't mean to interrupt you. I apologize. What is the same transaction or occurrence here on which you must base your argument that the logical relationship test applies and that recruitment is permissible? I think first I want to state what the Ninth Circuit has said about the logical relationship test is that it doesn't require a close proximity in time. It doesn't depend on temporal proximity, but rather on that close factual and legal connection. And the close factual connection is that the overpayment in 2019 is the but-for cause of Social Security's efforts to reduce the ongoing entitlement to disability insurance benefits. But for that $73,000 overpayment, Social Security would not be under its obligation under 404A1 to reduce Mr. Cooper's ongoing benefit payments. There's a very close factual connection there. The close legal connection is also supplied by the Social Security Act, which mandates this result. It mandates that the agency reduce Mr. Cooper's future benefits to account for the prior overpayment. And that fits very closely with this Court's decision in Sims, which dealt with the Medicare statute and the similar provision of 1395G, which required Medicare to recover by recoupment a pre-petition, pre-bankruptcy overpayment against payments that it owed to the health care provider post-petition. Does the fact that whether he's entitled to ongoing or future disability benefits have to be constantly re-evaluated by the agency? Does that affect the analysis of whether this is one singular logical transaction? No, it doesn't. The ongoing, and I don't know the exact schedule of periodic reviews, but to the extent there have been periodic reviews that simply affirm the status quo, that Mr. Cooper continues to have a disability that qualifies him to receive these benefits, all that does is confirm that nothing has changed. The status quo remains the same. He has the same pre-petition earnings history that qualifies him for these benefits. He continues to have the disability that qualifies him for these benefits. So if nothing has changed, and those are the facts in the record, then— So hypothetically, if you have a particular debtor for whom the analysis has changed, does that mean that it's no longer logically related? How would that work? Are you suggesting that you'd have a debtor who qualifies for disability insurance based on a particular disability, and then later on the disability resolves so that the person— Well, whatever factors you consider, if there's a change, he may either no longer be entitled to the same benefits or reduce benefit amounts, right? That's the point of ongoing evaluation, is to see whether the situation has changed. It wouldn't reduce the amount that the debtor is due, but it could— if the disability had resolved such that the person was able to return to work, then the person would no longer be eligible for disability insurance benefits, and there would be nothing from which the agency could recoup, because recoupment relies upon the ongoing obligation of the agency to make monthly benefit payments to Mr. Cooper. If he were able to return to work and Social Security no longer owed him these benefits, then recoupment would not be available, because recoupment is merely a defense. It's a defense against Mr. Cooper's claim against the agency. Well, if he had income, let's say, from another source, then wouldn't the payments be adjusted? Well, thank you for that question, because that helps me respond to something that the amicus council mentioned, and the answer is no. These benefits do not depend upon Mr. Cooper's assets or income from any other source. The formula for these benefits in Section 415 of Title 42, as adjusted by Section 404A1, is based upon his prior work history and earnings and his qualifying disability. It is not a means-tested program. It is not limited to people who are in poverty or close to poverty. So those are incorrect statements that amicus council made this morning. This program, Mr. Cooper's right to benefits are established based on his work history and earnings, not on he could receive a million dollars inheritance tomorrow, and his entitlement to these benefits would not change. And further, Social Security would not be able to touch that million dollars, because he's discharged the debt in bankruptcy, and he gets the full benefit of that bankruptcy discharge. He is protected. The bankruptcy is meaningful. I want to speak to, because I have to follow up on that, two points. One, in terms of the bankruptcy is meaningful, clearly the bankruptcy court considers this person's financial status and clearly would have considered whether or not he had some obligation of $73,000, would it not? I mean, if this was a no-asset Chapter 7 bankruptcy, but if to the extent that there's a $73,000 debt that exists, that's certainly a factor the bankruptcy court would consider in terms of the ultimate discharge, would it not? I mean, how would it not, I guess, is my point. In terms of bankruptcy law, just in terms of equities, people go into bankruptcy. Bankruptcy law is meant to protect people, obviously. It's meant to protect the debtor, allow someone to get a fresh start, correct? We would agree with that. Yes. All right, so how does the bankruptcy court not in some way consider, in terms of the overall facts presented before it, whether or not there's also, oh, by the way, a $73,000 obligation that this person owes? Your Honor, Mr. Cooper received the $73,000 in August of 2019, and he received his bankruptcy discharge in the summer of 2020. In that interim, he had lost the $73,000. I don't know exactly the reasons, but he no longer had that money, and that's reflected on his bankruptcy schedules. Yes. So it doesn't affect his eligibility for discharge. He could have had a million dollars of debts, and he could still get a bankruptcy discharge provided that his non-exempt assets were made available to pay his creditors. Let me ask you one other question because I won't allow you to get to your point, and I didn't mean to interrupt you. You made reference to the Medicare statute, and I believe it's 42 United States Code Section 1395G. Is that correct? Yes. All right, and that statute specifically provides, with respect to Medicare, the matter of a provider of services, following up on Judge Wynn's question, may make necessary adjustments on account of previously made overpayments or underpayments, correct, in the context of Medicare? Yes. Okay, and you're saying there's an analogous situation under the Social Security Act as well? That's right. Okay. Since I wanted to ask you, the opening brief references the manual program operations manual system and says that the pursuit of recoupment in this case violates the administration's manual. Is that correct? That's what the brief says, but the brief is not correct. The program operation manual system is internal guidance for Social Security, and it talks about bankruptcy discharges, and as a general matter, it says that recovery of an overpayment needs to be consistent with a bankruptcy discharge. That provision of the POMS does not talk about recoupment. That's a specialized situation. It provides a general rule, but it doesn't discuss the type of situation where recoupment would apply. So there's no inconsistency between the agency following the statute, which clearly needs to override any kind of nonbinding internal guidance. Okay. Yes, Judge Gould. I was going to say, if you're done answering Judge Wynn's question, I have one question, which is pretty simple. If we adopt the Social Security Administration's position and rule for you, are we creating a circuit split with four other circuits? Thank you, Your Honor. The answer is no because you're not creating a split between the Ninth Circuit and the Third Circuit because, as this Court has recognized in Sims and Gardens Regional and other cases, there is already a well-entrenched split between the two circuits as to the proper standards under equitable recoupment and the logical relationship test. The Third Circuit in 1992 in the University Medical Center case expressly rejected this Court's logical relationship test and said that a logical relationship between countervailing obligations is not sufficient. So there's already a decades-long split. As to the other circuits, the Seventh Circuit case of Navarre, the Sixth Circuit case of Rowan, in both of those cases, and Mr. Cooper's counsel this morning also mentioned In re French was a District of Oregon bankruptcy case. Those decisions all addressed an entirely different question. They didn't mention or analyze recoupment. They were asked whether Section 407 of Title 42 gave Social Security a blanket exemption from having overpayments discharged in bankruptcy. And those courts all rejected that and said, No, Social Security doesn't get an exemption from having its overpayments discharged in bankruptcy. But those cases are inapposite here. They don't address recoupment. And any suggestion by Mr. Cooper or the Amici that they do is incorrect. The Second Circuit's Malinowski decision doesn't discuss Social Security or any other federal program. In fact, it discusses a state law program, an unemployment insurance program. And it found there that, and it made an important point, which was that the State of New York could not give itself a right to recoup in its own statutes that overrode the bankruptcy code. But it pointed out, and it cited the D.C. Circuit's Consumer Health Services case, saying that Congress, however, has a free hand to allow a federal program to recoup funds and that that federal statute allowing recoupment would be given effect in a way that a state law would not. So there will be no additional split of authority. The recoupment law is already split between this court and the Third Circuit. I want to emphasize also the protections for beneficiaries such as Mr. Cooper when Social Security seeks to recoup an overpayment. Under 404.502C of 20 CFR, Mr. Cooper can request that the withholding amount is reduced so that it does not deprive him of the income that he needs to meet his basic living needs. And the agency will consider that and will make appropriate reductions. He has not requested that remedy thus far. But that is available to him, and there's no time limit that bars him from seeking that at this point. Also, he can seek waiver of recovery. Judge Nguyen asked at the beginning of the argument if he had challenged the overpayment. He did not challenge the overpayment itself, and he can't do that any longer. The time has run to do that. But he can ask for a waiver, meaning that the agency would agree not to recover this. And after we filed the briefs in this case, he did request a waiver. That is an administrative process that is ongoing. It has not yet concluded. The agency has made an initial determination that he is not entitled to waiver. But he has appeal rights within the administrative process, and if he's ultimately dissatisfied with that, he can appeal to the district court and ultimately to this court under 42 U.S.C. section 405G. That regulation, 20 CFR 404.502C, also allows the Social Security Administration to reduce a monthly withholding amount to as little as $10. And also I want to add, as I close here, that the agency's internal policies, and it's reflected in the POMs, we cite it in a footnote in our brief, that the agency's default withholding amount is 10% of a beneficiary's benefits. So if Social Security were to begin recouping, it would recoup 10%, and Mr. Cooper would continue to get 90% of his Social Security disability benefits in addition to all of his workers' compensation benefits, which the record shows exceed $4,000 a month. If the court has further questions, I'm happy to... I just have one. You mentioned 20 CFR 404.502. .508, closely following that, notes that Social Security regulations caution the agency that it should not distribute benefits in a manner that defeats the purpose of, quote, Title II by depriving a person of the income required for ordinary and necessary living expenses. That's also a factor to be considered by the agency, is it not? Yes, and the agency will consider that factor. Okay. Well, thank you very much. Thank you. Thank you. Thank you, counsel. Thank you, counsel. Do it. Do it. We have time for rebuttal left. I'll just have to stand up taller. You can adjust the podium, the lectern, if that's more comfortable for you. Ah, I found the button. As Your Honor, Judge Wynn pointed out, the program manual, which is cited in the opening brief, provides specifically that if a discharge accepts a Social Security debt and the bankruptcy proceedings are dismissed, normal collection can be resumed. Otherwise, the bankruptcy judgment will be binding on the SSA with repayment, if any, limited to the terms of the discharge order unless the Office of General Counsel is successful in objecting to the discharge. That's from the Social Security POMS manual. I understand counsel's statement that it applies except when the Social Security Administration decides that it doesn't apply and they're going to seek recoupment. But that's what the Social Security Administration has opined. There were questions about whether Mr. Cooper misrepresented himself when he was pro se. I asked him about that and he said, well, I looked it up and they said, are you getting time loss? And I wasn't, so I was getting a pension. So I just decided that's what it meant. He was wrong, but that's what he thought. But even if he intentionally misrepresented, there is a provision in the bankruptcy code called 11 U.S.C. Section 523A, 2, and 6. And if you are a creditor and you don't get notice of a bankruptcy and you believe that there's fraud or defalcation, we don't have that here, or a malicious and willful injury, you can reopen the case, file a complaint to determine the dischargeability, have an adversary proceeding, and there you are. That's not what happened here. The Social Security just took it upon itself to stop his payments and stop his benefits. And that's what prompted the motion for contempt. That was one way to get it before the court. And as Mr. Fraser indicated, if the disability goes away, he's no longer disabled, whether he goes back to work or not, the benefits go away. They are determined on a monthly basis, arguably. I don't know how often there's an evaluation, but it's not based upon, it's not directly tied to the original determination. As long as you're still disabled, you still get the benefits. A windfall? I don't know that it's a windfall. Mr. Cooper is very disabled, can't work, is in pain. I don't know that it's a windfall if the Social Security made a mistake. I guess you can argue that it is, but I personally have a number of medical problems, and I don't get paid for them, but I give the medical problems up, even for money, if I could get rid of them, even for the money that I might be getting. And lastly, there's an argument that there's a well-established split in the circuits. I don't believe that's the case. The Ninth Circuit cases that have dealt with this have all dealt with contracts. If you're talking about Medicare reimbursement, the contract provides, because the payments go back and forth, and at the end of the year, you have to have an accounting, and somebody owes someone money. That's recoupment. That's part of the same contract. It's part of the same relationship. Social Security disability benefits aren't part of the same relationship, even though Social Security disability benefits are based upon a determination of disability, that disability is ongoing, and you're required to still be disabled in order to get the benefits. And I don't have anything further, unless the Court has any questions. I don't see no questions. Is it okay to cede whatever I have left to Mr. Muir, or are we done? Absolutely. Just because you have the time, it doesn't mean you have to use it. Okay. I would cede it to him. I guess your question is, is Mr. Muir allowed to use the time if he'd like to use it? Yes, yes. He was accused of misstating some things, and I think he ought to have the ability to respond to that. Okay. Let's let him finish up. Thank you, Your Honor. I think this case has been argued, and I think it's appropriate to end it here. I don't see a further benefit. Okay. Thank you. We appreciate your comment. I want to say this is one of the most challenging cases anyone could imagine, and I want to thank counsel for Appellant, for Amicus, and for the Appellee Social Security Administration for your excellent arguments, and you've given us plenty to think about. The case will now be submitted, and the parties will hear from us in due course. Thank you again. Thank you. Thank you, Your Honor.
judges: GOULD, NGUYEN, Bennett